## Case No. 12,627.

### Ex parte SEELEY.

[3 App. Com'r Pat. 305.]

Circuit Court, District of Columbia. 1860.

PATENTS—DESCRIPTION IN PUBLISHED WORK.

[1. The description of an invention in a published work will bar the right to a patent though it has not been put in use.]

[2. The description in a publication of a canal lock gate as, "Others are so contrived that they can be drawn across the canal from a recess, and so made as to run in a groove," is sufficient to bar a claim for a patent for Dunlap's invention of an improvement in canal lock gates by the employment of a transversely sliding gate instead of a swing gate.]

Appeal by Samuel J. Seeley from the decision of the commissioner of patents refusing him a patent for an improvement in canal lock gates.

DUNLOP, Chief Judge. This is an appeal from the decision of the commissioner of patents refusing Mr. Seeley a patent on his first claim for improvements in a canal lock gate. He made three claims, the last two of which were granted and the first only refused. That first claim is the employment of a transversely sliding gate at the ends of a lock, instead of the usual swinging gate. The first claim is in these words: "1st. The use of a gate, to close the end of a canal lock, moving in a direction transversely to the length of the lock; substantially as herein set forth." The office refers to Cressy's Engineering, page 1557, as containing a published description of the gate claimed. The words in Cressy are: "Others (that is to say, stop gates) are so contrived that they can be drawn across the canal from a recess, and so made as to run in a groove."

First reason of appeal: This avers in substance that the commissioner erred in holding that the description in Cressy of a stop gate barred a patent to Mr. Seely of a lock gate. It seems to me there was no error here. No difference is perceived between a stop gate and a lock gate. Both cross the canal from a recess, and enter a groove to fit them, on the opposite side. If not identical, they are, in the words of the examiner, analogous, and bear a strong resemblance to each other.

Second reason of appeal: That the description of the gate in Cressy is insufficient. No artisan or machinist could build it. I think, with the office, that any mechanic could make a gate from this description; the subject matter being simple and plain, and the material parts set forth in Cressy.

Third reason of appeal: That the appellant's device is the new application of old and known means to a useful result. There does not appear to be any difference between a stop gate, described in Cressy, and the lock gate claimed by the appellant, as limited in his first claim, without the corrugated iron and the air chambers. That first claim goes for the gate only. The counsel for appellant thinks it ought to be shown by the office that the gate has been put in use, but the patent law only requires it to be described in a published work in this or a foreign country. No reasonable ground is seen to exclude engineers or the public from the use of a canal gate accurately described in a published work on engineering, when

they find it proper or expedient to apply such gate, as a new invention for fourteen years.

The counsel for appellant thinks the description in Cressy refers to a sluice gate alongside of the canal, to draw off the surplus water, rather than to a stop gate across it, to prevent the flows of water beyond the gate. I have given the words of Cressy to show that this is not so. Again, he says the description would be no more suggestive of a sliding gate to a canal lock than would be a similar description of a sliding door to a parlor, or a sliding gate to a farm fence. But this gate in Cressy is described as crossing a canal from a recess, and running into a groove. As for the fixtures at the top, to operate it, there is nothing, I presume, patentable in them, and they form no part of the rejected claim. Again, he says: The first claim, when rightly understood, as set forth, covers only a sliding gate in combination with the means described of operating it from the top, which he claims, without a reference to like means as anticipating them, makes the rejection improper. But the first claim covers the gate itself, and the gate only, and not the means in combination to work it. Mr. Low, of counsel for Mr. Seely, insists earnestly for the appellant that no application of such a gate has ever till now been made in this country to a canal lock; that the appellant introduced it on the Erie canal, whose engineers have approved it, as well as all other engineers by whom it has been seen; that it increases the capacity of a lock for boats 25 per cent., with other advantages, in cheapness of construction and diminished cost of repairs, over the swinging gate. These views are entitled to consideration, and caused me to hesitate whether the principle laid down by me in the late case of Ex parte Larowe, [Case No. 8,093,] did not apply. I said in that case that Larowe's merit had its foundation in the combination and application of old elements to the production of new and useful results, not before attained. But the gate described in Cressy is as applicable to a canal lock as to any other part of the canal, and such published description, by the terms of the act of 1836 [5 Stat. 117], is a bar to a patent to him who constructs the thing so described. In the first claim of Mr. Seely, there is no alleged improvement on the Cressy gate. The improvements are embraced in the second and third claims, and they are granted by the office, being a combination of old elements to produce new and useful results.

As I have before said, the first claim is simply for the gate, and such a gate as Cressy describes. I must therefore affirm the decision of the commissioner in refusing the appellant a patent on his first claim, and I do affirm it this 16th day of April, 1860. I return all the papers with this, my opinion and judgment, this 16th day of April, 1860.